BERNICE COOKE, PLAINTIFF-APPELLANT, v. THOMAS S. YARRINGTON AND MICHAEL COOKE, DEFENDANTS-RESPONDENTS.

MICHAEL K. COOKE, PLAINTIFF-APPELLANT, v. THOMAS S. YARRINGTON, DEFENDANT-RESPONDENT.

Argued November 21, 1972—Decided January 22, 1973.

Mr. *Thomas R. Chesson* argued the cause for appellant Bernice Cooke (*Messrs. Porzio, Bromberg and Newman,* attorneys).

Mr. *Donald M. Weitzman* argued the cause for appellant Michael K. Cooke (*Messrs. Glucksman and Weitzman,* attorneys).

Mr. *Donald W. Bedell* argued the cause for respondent Yarrington (*Mr. David Brian Rand,* on the brief; *Messrs. Schenck, Price, Smith and King,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. These actions were dismissed as to defendant Yarrington on the ground that the court lacked jurisdiction of him. The Appellate Division affirmed in an unreported opinion and we granted certification. 60 *N. J.* 513 (1972).

The actions arose out of a two-car collision in Pennsylvania on August 10, 1968. Michael Cooke was the driver of one car and his wife was his passenger. Yarrington was the driver of the other car. The Cookes lived and still live in Pennsylvania. Yarrington was then a resident of New Jersey.

The Cookes could have obtained service upon Yarrington in a Pennsylvania action under the nonresident motorist's statute of that State. For reasons which do not appear, they elected to sue here. They instituted separate actions (Mr. Cooke is codefendant in Mrs. Cooke's suit) on July 31, 1970, just short of the expiration of our two-year period of limitations. When Yarrington filed his answers after the expiration of the two-year period, plaintiffs learned that he had moved to New York before suit and that he challenged the service upon him made by leaving the suit papers with his mother at her home in New Jersey. We are told that plaintiffs then sued in New York, but failed when it was held under a borrowing statute that the Pennsylvania two-year statute was a bar.

When Yarrington's motion to set aside service and to dismiss the suit revealed he was not a member of his parents' household at the time service was attempted there, the Cooke's served Yarrington at his New York address by certified mail under Rule 4:4–4(e) which permits such service if "consistent with due process of law." See *Avdel Corp. v. Mercure,* 58 *N. J.* 264, 268, 277 *A.* 2d 207 (1971).

The service attempted at the parents' home is conceded to be insufficient. Hence the question as to service is whether service by mail was "consistent with due process of law." This turns upon the sufficiency of the New Jersey contacts to support an exercise of the judicial power of this State under the decisions of the United States Supreme Court, discussed in *J. W. Sparks & Co. v. Gallos,* 47 *N. J.* 295, 220 *A.* 2d 673 (1966).

The critical facts, supplied largely by the affidavits submitted by Yarrington on his motion, are these: At the time of the automobile accident (August 10, 1968), he was op-

erating an automobile owned by his father and registered
in New Jersey and was doing so under a driver's license is-
sued in New Jersey. Defendant then lived with his parents in
Kenvil, New Jersey. On June 6, 1969, after graduation from
Stevens Institute of Technology in Hoboken, New Jersey, de-
fendant took employment in Binghamton, New York, and
has since resided near that city. He was married on August
16, 1969. He states that "Since moving to the State of New
York, it has been my continuous intention to remain a resi-
dent of New York State and to be subject to its laws." He
became a licensed driver in New York in March 1970, and
was not thereafter licensed in New Jersey. He states that
as of July 31, 1970, the date this suit was instituted, and
since then, his only contacts with New Jersey consist of
visits on the average of once every two months with his
parents at Kenvil, New Jersey, and with his wife's parents
at Sparta, New Jersey; telephone calls to his parents' home
once every two weeks; weekly letters to them; and monthly
remittances to a bank in Jersey City, New Jersey, which
holds a note he gave for a student loan.

 As we noted earlier, the motion was not only to
set aside the service of process but also to dismiss the suit.
At the oral argument, the trial court raised the question
whether in any event the suits should be permitted to re-
main to the end that service might be attempted upon de-
fendant on one of the periodic visits to this State. No
mention was made of that possible disposition in the opinion
the trial court later filed. Jurisdiction of a nonresident
may be acquired by personal service upon him in this State.
*MacKay v. Avison*, 82 *N. J. Super.* 92, 96 (App. Div. 1964);
62 *Am. Jur. 2d, Process*, § 50, *p.* 832. Having found that
service by mail in New York was inadequate, the trial court
should have permitted the suits to remain on the chance
that jurisdiction of defendant by personal service might be
obtained. *Colon v. Pennsylvania Greyhound Lines, Inc.*, 27
*N. J. Super.* 280 (Law Div. 1953); *Goldenberg v. Sibersky*,
30 *N. J. Super.* 596 (Cty. Ct. 1954); *Jones v. Denmark*, 259

*So. 2d* 198, 200 n. 1 (Fla. Ct. App. 1972); *Hellman v Ladd,* 315 *Mich.* 150, 23 *N. W. 2d* 244 (Sup. Ct. 1946); *Nicolosi v. Fittin,* 434 *Pa.* 133, 252 *A. 2d* 700 (Sup. Ct. 1969); *Salay v. Braun,* 427 *Pa.* 480, 235 *A. 2d* 368 (Sup Ct. 1967); see *Fitzgerald and Mallory Construction Co. v. Fitzgerald,* 137 *U. S.* 98, 11 S. Ct. 36, 34 *L. Ed.* 608, 611 (1890). There is no reason to doubt the good faith of the plaintiffs, who evidently assumed, and reasonably so, that defendant's residence in New Jersey had continued. The suits having been instituted within the statutory period of limitations by the filing of the complaints, *R.* 4:2–2, it would be unjust to dismiss and thus deny plaintiffs an opportunity to seek a trial of the merits. See *X-L Liquors, Inc. v. Taylor,* 17 *N. J.* 444, 454 (1955). We would modify the judgments accordingly if we felt obliged to find that jurisdiction of defendant was not acquired by the service by mail in New York, but for the reasons which follow, we think jurisdiction was obtained by that process.

*International Shoe Co. v. Washington,* 326 *U. S.* 310, 66 S. Ct. 154, 90 *L. Ed.* 95 (1945), held that a State court may take jurisdiction of a controversy by appropriate notice to a nonresident if the underlying transaction had "minimal contacts" with the State. A more expansive view of State jurisdiction of the person was demanded by the reality that as interstate movements and transactions became commonplace State lines became less relevant to the resolution of ensuing controversies. The minimal contacts formula is imprecise and necessarily so. The controlling thought is fairness, and this permits flexibility to deal with the myriad factual patterns which emerge from our complex scene.

Yarrington stresses that since the accident did not occur in New Jersey, jurisdiction by service outside New Jersey cannot be asserted on the ground that the claims arose here. He insists that his residence in this State at the time of the out-of-state event is not a basis for such service in an action by nonresidents brought in this State after he left it. For this generalization, defendant refers to a tentative

dictum in *Owens v. Superior Court*, 52 *Cal.* 2d 822, 345 *P.* 2d 921, 924 (1959). Ordinarily, that is probably so. But the accident in Pennsylvania had some New Jersey roots beyond the mere fact of defendant's residence in this State, for the car he drove was registered here and he was behind the wheel because he held a driver's license New Jersey issued to him. New Jersey and Pennsylvania extended reciprocal privileges to the owners and operators of vehicles. *N. J. S. A.* 39:3–15 and 17 and 75 *P. S.* § 603 (*Pa. Stat. Anno.*). This is not to say that the New Jersey registration and license conferred extraterritorial rights but rather that Pennsylvania gave defendant permission to drive the automobile because he was licensed by New Jersey and the car was registered by New Jersey. Moreover, New Jersey asserted an interest in defendant's out-of-state operation to the extent that our statute provides for revocation of licensure because of the violation of the laws of a sister State. *N. J. S. A.* 39:5–30.1. Further, when the accident occurred, Yarrington gave his New Jersey address to the police, and plaintiffs reasonably relied upon that information in assuming defendant remained a resident of New Jersey. Finally, defendant in fact was available for personal service in New Jersey when suit was instituted, for he continued to visit here periodically and still does. In that significant respect he had a continuing contact with New Jersey which, with greater effort, would likely yield personal service upon him within our borders.

As we have said, the suits were instituted in New Jersey in good faith and on a reasonable assumption that Yarrington resided here. The statute of limitations has since run. It would be undeniably unfair to leave plaintiffs without a trial on the merits. On the other hand, the only element of unfairness which Yarrington can advance is that New Jersey may not be a convenient place for trial since none of the parties live here and the accident occurred in Pennsylvania. But this complaint can be obviated under the doctrine of *forum non conveniens*, and we see no reason not to invoke it to assist in reaching the just result which the

minimal contacts concept was designed to yield. We have heretofore said that the doctrine of *forum non conveniens* may warrant sustaining service of process which otherwise might be vulnerable. *Wangler v. Harvey,* 41 *N. J.* 277, 285–286 (1963). See also *In re Estate of Gardinier,* 40 *N. J.* 261, 268 (1963). The doctrine of *forum non conveniens* as we have defined it would readily support an application by Yarrington for a trial elsewhere. See *Gore v. United States Steel Co.,* 15 *N. J.* 301 (1954), *cert.* denied, 348 *U. S.* 861, 75 S. Ct. 84, 99 *L. Ed.* 678 (1954); *Vargas v. A. H. Bull Steamship Co.,* 25 *N. J.* 293 (1957), *cert.* denied, 355 *U. S.* 958, 78 S. Ct. 545, 2 *L. Ed. 2d* 534 (1958); *Starr v. Berry,* 25 *N. J.* 573 (1958); *Semanishin v. Metropolitan Life Ins. Co.,* 46 *N. J.* 531 (1966).

The judgments are therefore reversed and the matters remanded for trial on the merits, with the proviso that, if defendant Yarrington so moves on the ground of *forum non conveniens,* the actions shall be dismissed but on condition that Yarrington accepts service of process in New York or Pennsylvania as he may elect, that the courts of such State accept the litigation, and that Yarrington does not assert the bar of a statute of limitations in such actions.

CONFORD, P. J. A. D., Temporarily Assigned (dissenting). I would go no further than to set aside the dismissal of the action, allowing plaintiffs a reasonable time to accomplish personal service of process on the defendant within this State. I do not believe plaintiffs have effected personal jurisdiction over defendant in New Jersey by mailing process to him in New York, compatible with any justifiable rationale of the minimum contacts principle.

Defendant had no presence in New Jersey when process was left for him at his mother's home, business or otherwise. He had moved from the State about a year before. Nor did plaintiffs' injuries emanate from any action or activity of the defendant in this State or from action elsewhere having significant effects here. See *Avdel Corporation v. Mercure,* 58

*N. J.* 264, 269 (1971); *Roland v. Modell's Shoppers World of Bergen Cty.,* 92 *N. J. Super.* 1 (App. Div. 1966); *Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc.,* 102 *N. J. Super.* 143 (App. Div. 1968), certif. den. 52 *N. J.* 535 (1968); *Restatement, Conflict of Laws* 2d, §§ 36, 37 (1969).

The "New Jersey roots" of the Pennsylvania accident alluded to by the Court as a basis for sustaining jurisdiction here — New Jersey registration of car and driver — are in my judgment too tenuous a connection with the accident for such consequences. See *Restatement, Conflict of Laws* 2d, § 36, Comment *e*, p. 149 (1969), indicating that a state is naturally interested in all acts done within its territory and that therefore "[a] state will usually have judicial jurisdiction over an individual who does, or who causes to be done, in the state an act, even though it is not claimed to be tortious, *as to causes of action arising from the act*". (Emphasis added.) In no realistic sense did this accident arise from the facts that defendant and the vehicle he drove were licensed and registered, respectively, in New Jersey.

I am aware of no case or authoritative expression anywhere which sustains "contacts" such as those here advanced by plaintiffs as sufficient to sustain jurisdiction over an absent defendant. See *Owens v. Superior Court of Los Angeles County,* 52 *Cal.* 2d 822, 345 *P.* 2d 921, 924 (Sup. Ct. 1959). Plaintiffs' dilemma here is simply a result of failure by their attorneys (not New Jersey counsel) to bring a timely action in an appropriate jurisdiction. Pennsylvania was the natural forum in which to bring this action, and defendant could have been sued there under the Pennsylvania non-resident motorists act. Instead, counsel waited until the Pennsylvania and New Jersey statutes of limitations had almost expired, and then forwarded the case to New Jersey attorneys for suit, apparently without investigating to determine if defendant, an unmarried resident at his parents' New Jersey home at the time of the accident almost two years before, was still a resident there. There is no indication whatever that

defendant's removal from the State in the meantime was motivated in any way by plaintiffs' pending claim against him.

Cases involving jurisdictional due process cannot in my judgment be decided on a court's conception of the good faith of a plaintiff in selecting a forum for action; nor upon the absence of prejudice to a defendant in being subjected to suit in the particular jurisdiction where there are insufficient contacts present. "Fairness", in the due process sense of *International Shoe Co. v. Washington,* 326 *U. S.* 310, 316, 66 S. Ct. 154, 90 *L. Ed.* 95 (1945) and similar decisions of the United States Supreme Court, is couched only in terms of the foreign defendant having "certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." I cannot find such minimum contacts of defendant with New Jersey in this case on any of the several postulates for jurisdiction which have been developed by the cases or by the *Restatement, Conflict of Laws* 2d, cited above, or on any basis which independent thought about the matter suggests.

The squeeze on plaintiffs here is not the result of reasonable enforcement of due process by the courts below but that of the carelessness of counsel in letting the statutes of limitations of those states having potential jurisdiction over defendant in the matter go by without suit. Obviously defendant had nothing to do with that. Relief from such statutes cannot be afforded plaintiffs at the price of dispensation with due process requirements as against defendant. Jurisdiction over the person is not a matter of discretion with the court but a question of power to act. Perhaps plaintiffs have a negligence action against the attorneys handling the matter in the first instance.

I would thus modify the judgment of the Appellate Division only to the extent of the expression in the first paragraph of this dissent.

*For reversal and remandment*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges SULLIVAN and LEWIS—6.

*For modification*—Judge CONFORD—1.