139 N.J. Super. 220 (1976)
353 A.2d 148
RAYMOND D. EGAN ET AL., PLAINTIFFS
v.
JAMES FIELDHOUSE ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 9, 1976.
*222 Mr. Thomas E. Napolitano for plaintiffs (Messrs. Napolitano & Napolitano, attorneys).
Mr. Joel M. Ellis for defendants.
PRESSLER, J.C.C., Temporarily Assigned.
Defendants James and Joyce Fieldhouse, non-residents of New Jersey when this action was commenced, were served with process by certified mail addressed to their Wisconsin residence, pursuant to R. 4:4-4(e). They move to dismiss the action for lack of in personam jurisdiction, claiming that this attempted exercise of long-arm jurisdiction is contrary to essential due process. For the reasons herein set forth, the motion is denied.
According to the undisputed facts before the court on the motion, defendant James Fieldhouse, a builder trading as James Fieldhouse, constructed a single-family dwelling in Wyckoff, New Jersey, in which he and his family resided for an unspecified time. They sold the house to plaintiffs Raymond and Patricia Egan in October 1974 and moved at that time to Wisconsin, where they have since resided. The complaint, sounding in negligence and in strict liability for tort, alleges that in May 1975 the Egans together with their three minor children and a guest, all of whom are also plaintiffs, were assembled on the patio deck of the house when the deck, by reason of the improper, faulty and negligent manner in which it had been attached to the house, collapsed. All were injured. They further allege that that construction defect was latent, constituted a dangerous condition within the actual or constructive knowledge of defendants, and was not reasonably discoverable by them prior *223 to the accident. There is no question but that the complaint states a viable cause of action against defendant as builder, see Totten v. Gruzen, 52 N.J. 202, 209-211 (1968), and against both defendants as vendors, see O'Connor v. Altus, 67 N.J. 106, 114 (1975).
The development and scope of the exercise of long-arm jurisdiction by this State have received considerable recent judicial attention. Suffice it to say that pursuant to the constitutional predicates articulated in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), New Jersey, by the adoption of R. 4:4-4 and judicial construction thereof, has opted for an exercise of jurisdiction over nonresidents, both corporate and individual, and in respect of both commercial and noncommercial litigation, to the utmost limits permitted by due process. It is also clear that due process in this context is coextensive with fundamental notions of fairness and demands only that the extent and nature of defendant's contacts in or with this State or in respect of a cause of action arising in this State, or in respect of a matter of legitimate state concern, be sufficient, under the circumstances of the controversy and as a matter of substantial justice and fair play, to justify the exercise of extraterritorial judicial power by this state. The determination of fairness must, moreover, be made in accord with "the reality that as interstate movements and transactions became commonplace State lines became less relevant to the resolution of ensuing controversies." Cooke v. Yarrington, 62 N.J. 123, 128 (1973). And see, generally, Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 299-301 (1966). Thus an exercise of long-arm jurisdiction over a nonresident defendant has been sustained in respect of a single tort committed by him while visiting in this State. See Carlin v. Schuler, 89 N.J. Super. 366 (Law Div. 1965); Knight v. San Jacinto Club, Inc., 96 N.J. Super. 81 (Law Div. 1967). It has also *224 been sustained where the defendant in an automobile negligence action resided in New Jersey at the time of the accident, moved to another state before suit was commenced, the accident occurred out-of-state, but defendant's automobile was registered in the State and he was licensed to drive by this State. Cooke v. Yarrington, supra.
Statement of these principles dictates the inevitable result here. These defendants were residents of this State, if not when the cause of action accrued, then clearly when it had its genesis. The situs of both the genesis of the cause of action and its accrual is in this State. Defendants built the house here, they lived here in it, and they sold it here allegedly with knowledge of the defect. Clearly ownership or other substantial interest in real property in this State constitutes a sufficient contact for the exercise of long-arm jurisdiction in respect of controversies arising directly out of that ownership or interest, even though it may be terminated at the time of commencement of the action and even if at that time defendant is nonresident. This State, of course, affords all manner of protections to defendant during the period of his ownership and in respect thereof. Concomitantly, the increasing protections being afforded in this jurisdiction to buyers and occupants of housing should not be effectively defeated by denying them access to the courts of this State because the responsible defendant is not or is no longer resident. Such a result would contradict the economic and interstate realities of residential construction and resale and would unfairly contravene the State's interest in providing its citizens with a forum. These defendants ought not escape the obligation to respond here for the consequences of their alleged acts simply because of their subsequent removal from this state.
Research discloses only one recent decision of a sister-state involving an attempted exercise of long-arm jurisdiction in an action based on latent defects brought by vendees of a house against their vendors, who had moved to another state after the sale. See Stepnowski v. Avery, 234 Pa. Super. *225 492, 340 A.2d 465 (Pa. Super. Ct. 1975). The dismissal of the action there, however, turned on the construction of the Pennsylvania long-arm statute which, unlike the New Jersey rule, does not purport to confer as broad a long-arm jurisdiction as is constitutionally permissible. Thus the Pennsylvania court simply held that its own statute, based on a doing-business test, did not comprehend an isolated sale of a residence.
Finally, defendants urge dismissal on the ground of forum non conveniens. This court's declination to exercise its jurisdiction on the basis of that doctrine ordinarily requires a clear showing of the inappropriateness of plaintiff's choice of forum. His choice will, moreover, be regarded as inappropriate only if he will not himself be seriously prejudiced by being denied access to the courts of that forum and if such access will result in defendant being unduly burdened or harassed, or if there is some other compelling reason. See Civic Southern Factors v. Bonat, 65 N.J. 329 (1974); Amercoat Corp. v. Reagent Chem. & Research, Inc., 108 N.J. Super. 331 (App. Div. 1970); Litton Ind. Systems v. Kennedy Van Saun Corp., 117 N.J. Super. 52 (Law Div. 1971). It is clear that under the circumstances here, New Jersey is the most appropriate forum. The house, which will undoubtedly be the subject of expert inspection, report and testimony is located here. Witnesses as to its construction and the materials used therein are here. Medical treatment was rendered here. All six plaintiffs are here. Questions implicating local law are involved. Indeed, there is no other forum, including Wisconsin, which has any substantial interest in or connection with the controversy or which could arguably be more convenient than New Jersey. Obviously, defendants will be inconvenienced by having to defend in New Jersey. But that inconvenience is, of course, no greater than that ordinarily encountered by litigants who move from one state to another during the pendency of litigation, a common occurrence in our highly mobile society.
*226 Defendants have moved for an extension of time in which to answer the complaint in the event their motion to dismiss is denied. Their time to so do is extended for a period of 30 days following the date hereof.